UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**GLEN RUSHEFSKY,** on behalf of himself and all others similarly situated,

Plaintiff,

v.

**AUDEZE LLC,**

Defendant.

---

Docket No.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, GLEN RUSHEFSKY, ("Plaintiff" or "Mr. Rushefsky"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against AUDEZE LLC, ("AUDEZE" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to ensure that its ecommerce Website, www.audeze.com, is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. **Plaintiff GLENN RUSHEFSKY** is a legally blind resident of Bronx County, New York, registered with the New York State Commission for the Blind under Registration No. **284906**. According to a July 15, 2025, medical evaluation by **Dr. Samuel R. Mendel, MD**, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with Leber Hereditary Optic Neuropathy ("LHON"), a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and

results in sudden, permanent central vision loss. Dr. Mendel documents that Mr. Rushefsky suffers from profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity, meeting both federal and New York State criteria for legal blindness. Due to the severity and permanence of his condition, Dr. Mendel recommends that Mr. Rushefsky receive **24-hour supportive care** to ensure his safety and ability to perform activities of daily living. Exhibit A

2. Because of his permanent and irreversible vision loss, Mr. Rushefsky relies **exclusively** on screen-reader software, including NonVisual Desktop Access ("NVDA")**,** to navigate digital interfaces, read product information, and complete online transactions. When a website is properly coded, NVDA can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, NVDA cannot interpret essential content, rendering the site unusable for blind users.

3. **Defendant AUDEZE LLC** owns, operates, and controls the commercial retail website www.audeze.com, which markets and sells high-end headphones, audio equipment, accessories, and related products to consumers throughout the United States, including New York. The Website functions as an online retail store and a digital gateway to Defendant's nationwide distribution network. Defendant is responsible for ensuring that the Website complies with federal, state, and local accessibility laws.

4. On multiple occasions in 2025 and 2026, Mr. Rushefsky visited www.audeze.com using NVDA with the intent to browse and purchase specific audio products, including the **Aluminum Travel Case for the CRBN Electrostatic** and the **MM-100 Professional Headphones**. Plaintiff is an avid listener of audiobooks, music, and spoken-word content, and

relies heavily on high-quality audio equipment due to his blindness. He selected Audeze because of its reputation for precision audio engineering and because he believed the MM-100's studio-grade sound and the CRBN accessory case would meet his needs as a blind consumer. His visits to the Website were motivated by a genuine desire to obtain these products and complete purchases he was unable to make due to the Website's accessibility barriers.

5. During each visit, Mr. Rushefsky encountered **multiple accessibility barriers** that prevented him from meaningfully browsing or purchasing merchandise. NVDA announced product images only as "graphic," size selectors only as unlabeled "button," and the "Add to Bag" control without any accessible name or purpose. As a result, he could not determine what the products looked like, could not select his size, and could not add any item to his cart. Defendant provided no accessible alternative means for blind consumers to obtain the same information.

6. Automated accessibility audits confirm the barriers Mr. Rushefsky personally encountered. A WAVE scan of the Audeze homepage returned **64 Errors**, **63 Missing Alternative Text errors**, **7 Contrast Errors**, and over **165 Alerts**, with an **AIM Score of 2.9 out of 10**. A WAVE scan of the **MM-100 Professional Headphones product page** returned **75 Errors**, **39 Contrast Errors**, and over **460 Alerts**, including missing alternative text, missing form labels, broken ARIA references, empty buttons, empty headings, and unlabeled interactive controls. A **SortSite audit** of the Website identified hundreds of accessibility issues across at least **1,400 pages**, including Level **A**, **AA**, and **AAA** WCAG failures, broken links, ARIA violations, focus problems, and structural errors. These findings confirm that the Website's inaccessibility is **systemic and pervasive**, not isolated. Exhibit B,

7. Defendant's failure to design, maintain, and operate its Website in a manner

accessible to blind and visually impaired consumers denies Mr. Rushefsky—and all similarly situated individuals—the full and equal enjoyment of Defendant's goods, services, privileges, and advantages, in violation of Title III of the Americans with Disabilities Act**,** the New York State Human Rights Law**,** the New York City Human Rights Law, and the New York State Civil Rights Law**.**

8. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is—and remains—fully accessible to blind and visually impaired consumers in substantial conformance with WCAG 2.1 Level AA**.**

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III of the Americans with Disabilities Act ("ADA"), a federal civil rights statute. Supplemental jurisdiction over Plaintiff's state and city law claims is proper under 28 U.S.C. § 1367.

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 *et seq.*) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") & § 296 *et seq.*; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

11. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and **(c)** because Plaintiff resides in Bronx County**,** accessed and attempted to use the Website from his home within this District, and suffered injury here. A substantial part of the

discriminatory conduct giving rise to this action—including the denial of equal access to Defendant's online goods, services, and digital content—occurred within this District.

12. Defendant Audeze LLC conducts substantial, continuous, and systematic business within this District by marketing, advertising, and selling audio equipment, headphones, and accessories to New York consumers through its highly interactive retail Website, www.audeze.com. Defendant purposefully avails itself of the privilege of conducting business in New York by transmitting digital content, files, and data to consumers located in this District, fulfilling online orders to New York addresses, and engaging in nationwide e-commerce directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. See *Reed v. 1-800-Flowers.com, Inc.***,** 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC***,** 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court***,** 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.***,** 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.***,** 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.***,** 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022)

13. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here. Courts within this Circuit have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state website operators whose digital platforms target or serve New York consumers.

## THE PARTIES

14. **Plaintiff GLENN RUSHEFSKY** is a legally blind resident of Bronx, New York,

and is registered with the New York State Commission for the Blind under Registration No. **284906**. As documented in a July 15, 2025, medical evaluation by **Dr. Samuel R. Mendel, MD**, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with **Leber Hereditary Optic Neuropathy ("LHON")**, a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. He presents with **profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity**. Because of his irreversible vision loss, Mr. Rushefsky relies **exclusively** on screen-reader software, including NVDA, to navigate digital interfaces, read product information, and complete online transactions independently.

15. **Defendant AUDEZE LLC** is a business entity that owns, operates, controls, and maintains the commercial retail website www.audeze.com, which markets and sells high-end headphones, audio equipment, accessories, and related products to consumers nationwide, including residents of New York. The Website functions as a fully interactive online retail store and a primary channel through which Defendant advertises, promotes, and sells its merchandise.

16. Defendant markets, advertises, and sells its products directly to New York consumers through its Website, transmits digital content to users located in this District, and maintains a highly interactive online platform that enables consumers to browse products, review descriptions, select configurations, access promotions, and complete purchases. The Website includes detailed product pages—such as the **Aluminum Travel Case for the CRBN Electrostatic** and the **MM-100 Professional Headphones**—that present images, descriptions, specifications, and purchasing information to consumers nationwide. Defendant is responsible for

ensuring that the Website is designed, coded, and maintained in a manner that is accessible to individuals who rely on screen-reading technology.

17. At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website and by repeatedly transmitting digital content, files, and data to consumers located here. Defendant's ongoing operation of a nationwide e-commerce platform directed at New York consumers constitutes continuous and systematic business activity within this District.

## NATURE OF ACTION

18. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

19. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

20. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software,

is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

21. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

22. Plaintiff, GLEN RUSHEFSKY, is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

23. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a

> series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."
>
> See also American Federation for the Blind, *Screen Readers*, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

24. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

25. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements

b. Unlabeled frames and navigation regions

c. Scripts without accessible alternatives

d. Inaccessible forms and input fields

e. Content conveyed solely through visual presentation

f. Inability to resize text without loss of functionality

g. Time limits that cannot be adjusted or disabled

h. Missing or ambiguous page titles

i. Links lacking descriptive context

j. Keyboard focus indicators that are not discernible

k. Undetectable default language settings

l. Components that trigger unexpected context changes

m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

26. **Plaintiff GLENN RUSHEFSKY** is a legally blind consumer residing in Bronx, New York, and is registered with the New York State Commission for the Blind under Registration No. **284906**. As documented in a July 15, 2025, medical evaluation by **Dr. Samuel R. Mendel, MD**, Board-Certified Ophthalmologist at the New York Eye & Ear Infirmary of Mount Sinai, Mr. Rushefsky has been diagnosed with **Leber Hereditary Optic Neuropathy ("LHON")**, a mitochondrial optic-nerve disorder that causes rapid degeneration of the retinal ganglion cells and results in sudden, permanent central vision loss. He presents with **profound central scotomas, severely reduced visual acuity, and markedly diminished contrast sensitivity**. Because of this permanent impairment, Mr. Rushefsky relies **exclusively** on screen-reader software, including NVDA, to navigate digital interfaces, read product information, and complete online transactions.

27. LHON is a permanent, non-reversible condition for which there is no curative

treatment. Mr. Rushefsky's remaining peripheral vision is insufficient for reading standard print, recognizing images, or visually interpreting digital interfaces. As a result, he depends entirely on properly coded, screen-reader-compatible websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers.

28. In 2025 and 2026, Mr. Rushefsky became interested in purchasing several audio products from **Audeze**, including the **Aluminum Travel Case for the CRBN Electrostatic** and the **MM-100 Professional Headphones**. As a blind consumer who relies heavily on high-quality audio equipment for music, audiobooks, and spoken-word content, he selected Audeze because of its reputation for precision audio engineering and because he believed these products would meet his needs. His positive experience with Audeze's reputation and product specifications motivated him to visit **www.audeze.com** to explore and purchase these items.

29. On multiple occasions—including **November 15, 2025**, **November 16, 2025**, and **January 7, 2026**—Mr. Rushefsky visited www.audeze.com using NVDA with the intent to browse categories, review product details, compare specifications, and determine whether to purchase the above-referenced items. During these visits, he attempted to access specific product pages, including but not limited to: • **Aluminum Travel Case for CRBN Electrostatic** • **MM-100 Professional Headphones** These items were selected because they matched the audio quality, durability, and functional characteristics he was seeking.

30. Despite his clear intent to shop, Mr. Rushefsky was unable to meaningfully navigate or interact with Defendant's Website due to pervasive accessibility barriers. NVDA repeatedly failed to announce interactive elements, misinterpreted or skipped essential controls, and encountered structural defects that prevented him from accessing product information.

Specifically, he encountered:

• Product images lacking descriptive alt text, causing NVDA to announce only **"graphic."**

• Unlabeled or empty buttons, including configuration selectors and **"Add to Cart."**

• Empty links and empty headings that provided no navigational context.

• Broken ARIA references and misused ARIA roles that prevented NVDA from identifying menus, landmarks, and interactive elements.

• Keyboard traps and focus issues that caused NVDA to jump unpredictably across the page.

• Low-contrast text that rendered essential information unreadable for users with low vision. These barriers are not hypothetical; they appear on the exact product pages Plaintiff attempted to access and are corroborated by objective evidence.

31. A WAVE scan of the Audeze homepage revealed:

• 64 Errors

• 63 Missing Alternative Text errors

• 7 Contrast Errors

• 165 Alerts

• AIM Score: 2.9 out of 10.

A WAVE scan of the MM-100 Professional Headphones page revealed:

• 75 Errors

• 39 Contrast Errors

• Over 460 Alerts

• Missing form labels

• Empty buttons

• Empty links

• Broken ARIA references

• Unlabeled interactive controls

These findings confirm that the barriers Plaintiff encountered are real, repeatable, and systemic.

32. A SortSite audit of the Website identified hundreds of accessibility issues across at least 1,400 pages, including broken links, blank labels, ARIA violations, inaccessible modals, keyboard traps, and Level A, AA, and AAA WCAG failures. These findings demonstrate that the Website's inaccessibility is pervasive, not isolated.

33. As a direct result of these barriers, Mr. Rushefsky was unable to browse products, activate filters, read descriptions, select configurations, or access essential information needed to evaluate or purchase audio equipment. His exclusion was real, repeatable, and directly caused by Defendant's failure to implement industry-standard accessibility practices.

34. Defendant's Website is not a passive marketing tool. It is a fully interactive retail platform central to Defendant's business model, offering product listings, detailed descriptions, specifications, promotional content, and checkout functionality. Defendant relies on www.audeze.com to market and distribute its products nationwide, including to consumers in New York.

35. On information and belief, Defendant has operated www.audeze.com for years without implementing WCAG-compliant accessibility protocols. Despite longstanding federal guidance and the widespread availability of automated testing tools, Defendant has failed to

remediate the barriers identified in this action, despite prior ADA lawsuits field against them which settled and which presumably contained an agreement to remediate their site. [1] The very same issues persist across product listings, category pages, and navigational flows, reflecting a systemic disregard for blind and visually impaired users.

36. Plaintiff's intent to return to www.audeze.com is concrete, credible, and ongoing. His interest is not abstract or generalized; it is tied to specific products**,** specific attempted transactions**,** and specific functional needs arising from his blindness.

37. Plaintiff continues to seek the **MM-100 Professional Headphones**, a product he researched extensively and attempted to purchase during his prior visits. The MM-100 is a studio-grade planar magnetic headphone with detailed specifications, configuration options, and compatibility information that are available **only** on Audeze's Website. Because Plaintiff cannot visually inspect audio equipment in stores, he depends entirely on accessible online product pages to evaluate features such as driver type, frequency response, weight, materials, and included accessories. He intends to return to the MM-100 product page to complete the purchase once the Website is accessible.

38. Plaintiff also remains interested in purchasing the **Aluminum Travel Case for the CRBN Electrostatic**, which he attempted to evaluate during his prior visits. The case is designed specifically for Audeze's CRBN line, and the Website is the primary source for compatibility details, dimensions, and product images. Plaintiff intends to revisit the product page to confirm compatibility and complete the purchase once the Website is accessible.

[1] See, *Vargas v. Audeze LLC* (1:22-cv-12061) District Ct. D. Massachusetts – Filed on Dec. 5, 2022, and on March 7, 2023, the matter was dismissed as a result of Plaintiff's Stipulation of Dismissal.

39. Plaintiff's need for accessible online shopping is permanent and ongoing**.** His LHON-related vision loss prevents him from browsing physical retail stores, reading packaging, or visually inspecting audio equipment. As a result, he relies exclusively on accessible e-commerce platforms to evaluate and purchase products. Audeze's Website offers a broader, more current, and more detailed selection of its products than any third-party retailer, making it the only meaningful channel through which Plaintiff can access the full range of Audeze merchandise.

40. Plaintiff's prior attempts to shop on the Website were genuine and purposeful**,** motivated by his desire to purchase the MM-100 and the Aluminum Travel Case. He attempted to read product descriptions, review specifications, and add items to his cart, but was prevented from doing so by the Website's accessibility barriers. His inability to complete these purchases does not diminish his interest; it reinforces his motivation to return once the barriers are removed.

41. Plaintiff's intent to return is not speculative**.** It is grounded in:

- his prior visits,
- his attempted purchases,
- his ongoing need for audio equipment,
- his reliance on accessible online shopping, and
- the fact that Audeze's Website is the exclusive or primary source for the products he seeks.

## CLASS ACTION ALLEGATIONS

42. Plaintiff **GLEN RUSHEFSKY** brings this action on behalf of himself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a)

and 23(b)(2):

> All legally blind individuals in the United States who have attempted to access www.audeze.com and were denied equal access to its digital content, product information, and online purchasing functions due to persistent accessibility barriers during the relevant statutory period.

43. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2):

> All legally blind individuals residing in the State of New York who have attempted to access www.audeze.com and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.

44. Common questions of law and fact exist among the Class, including:

- Whether www.audeze.com qualifies as a "public accommodation" or a service of a place of public accommodation under Title III of the ADA;
- Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support;
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

45. Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

46. Plaintiff will fairly and adequately represent the interests of the Class. He has

retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

47. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

48. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

49. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use Defendant's Website and faced exclusion due to its inaccessibility.

**<u>FIRST CAUSE OF ACTION</u>**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

50. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

51. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

52. Defendant's Website that is offered as a link to the company is a service that is

offered to the general public, and as such, must be equally accessible to all potential consumers.

53. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

54. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

55. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.audeze.com, has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon

information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

56. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

57. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

58. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

59. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

60. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.audeze.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article

15 of N.Y. Executive Law § 292(1).

61. Plaintiff has visited the Website, www.audeze.com, on a number of occasions and has encountered barriers to his access that exist.

62. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

63. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

64. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article

15 of N.Y. Exec. Law § 296(2)(c).

65. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

66. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

67. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

68. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

69. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

70. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

71. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

72. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

73. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

74. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

75. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.audeze.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

76. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

77. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

78. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id*...

79. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**<u>FOURTH CAUSE OF ACTION</u>**
**(Violations of the New York City Human Rights Law)**
("NYCHRL")

80. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

81. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

82. Defendant is subject to NYCHRL because it owns and operates the Website, www.audeze.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

83. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

84. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

85. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

86. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

87. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

88. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

89. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

90. Plaintiff is also entitled to reasonable attorneys' fees and costs.

91. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

92. Plaintiff, GLEN RUSHEFSKY, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

93. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

94. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York,
March 2, 2026

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York, 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com